RAWLS, Acting Chief Judge
(dissents).
In my opinion the decision of the trial judge should be affirmed.
Custom Finance Company floor-planned (financed by trust receipts) new mobile homes purchased by the dealer, Cardair Mobile Homes, from the manufacturer, Armor Manufacturing Company. According to their usual method of doing business Cardair puchased new mobile homes from Armor. Armor issued a Manufacturer’s Statement of Origin and Invoice on each mobile home. Plaintiff, Custom Finance Company financed 100% of the wholesale value of these mobile homes for Cardair. As security, plaintiff took a floor-plan chattel mortgage and promissory note from Car-dair. This chattel mortgage and note was executed by Cardair when the mobile home was delivered to it by Armor. Upon execution of the chattel mortgage and note, Armor would physically attach to this document the Manufacturer’s Statement of Origin and the original copy of the Invoice. These documents were forwarded to plaintiff, and plaintiff paid Armor the total amount due. The terms of the transaction between plaintiff and Cardair were either total payment within ninety days of the date of the mortgage or 10% curtailment or reduction of the principal amount plus interest within that period.
In'1965 the dealer sold five such mobile homes out of trust. This was accomplished by the purchasers executing a conditional sales contract with the dealer, who thereafter assigned same to Barnett First National Bank.
Barnett required credit applications for the purchasers and carried insurance with Delta Corporation of America against loss upon such contracts when title issued. The bank neither required the issuance of title prior to assignment nor did it inquire as to the status of floor planning or issue the check jointly to the dealer and the entruster. Barnett required a copy of the original invoice to accompany the conditional sales contract. In the case of four of the mobile homes in question this invoice indicated that same was financed 100% by Custom Finance.
The entruster kept in its possession the certificate of origin which is the only indicia of title and which must be presented to the Motor Vehicle Commission before title can be issued.
*295 When it became known that the dealer had sold the five mobile homes out of trust, Barnett took a second mortgage on property in Duval County owned by the dealer. This mortgage was conditioned to secure delivery to Barnett of the title certificates on the five mobile homes. This mortgage was foreclosed and Barnett now has title to the property.
The entruster brought this action to determine its right and to impress a constructive trust upon the receipts from the conditional sales contracts.
The sole question is whether the en-truster with indicia of title has a superior lien to one who purchased from the dealer an assignment of the innocent purchasers’ conditional sales contract.
Both parties concede that the original purchasers were bona fide innocent purchasers for value and upon payment of their contracts are entitled to clear title.
The parties have stipulated that Florida law only is applicable in this case. The facts occurred in 1965, prior to the effective date of the Uniform Commercial Code, January 1, 1967. Therefore, the Uniform Trusts Receipts Law (Ch. 673) and Motor Vehicle titling laws control.
Section 673.09, Florida Statutes, F.S.A., provides that where the dealer has the privilege of sale, a good faith purchaser in the ordinary course of trade and for value takes free and clear of the entruster’s lien. Where the purchase is made on credit, the entruster is entitled to the debt owing to the trustee (dealer) and any security given therefor by reason of said purchase. Therefore, the entruster has a statutory right to the conditional sales contracts and their proceeds.[3] This Court has previously held that the Act subrogates the en-truster to any debt owing from the purchaser.[4]
The wrongdoing of the dealer here was in selling to Barnett that which was rightfully the entruster’s. It is important to note here that the conditional sales contracts were contracts between the purchaser and seller, and the seller assigned his interest to Barnett. The assignment reads:
“ * * * all right, title and interest of the undersigned dealer are hereby sold * * * [to Barnett].”
This is not a case of the purchaser arranging his own financing and paying the dealer in cash. In effect what actually occurred here constituted credit sales secured by the conditional sales contracts.
Section 673.09, Florida Statutes, F.S.A., provides that the entrusting of goods by the entruster to a trustee, under a trust receipts transaction, “shall be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value.” Thus, Barnett and the purchasers of the mobile homes can under the Trust Receipts Law occupy the same position — one with respect to the entrusted goods and the other with respect to the conditional sales contracts — provided each in purchasing the item it purchased did so in good faith and for value. The first question to be decided here is whether Barnett purchased the contracts in good faith.
Unlike other goods in retail trade which may be financed by trust receipts, motor vehicles and mobile homes are subject to the Florida titling act, which now requires statements of origin on new vehicles. These statements must accompany an application for title,[5] but Section 319.21, Florida Statutes, F.S.A., permits an entruster to hold the statement of origin until his *296 security interest is satisfied. This statement of origin is the only existing indicia of title until a title certificate is issued. In the case of a new vehicle possession of the statement of origin is absolutely necessary for anyone purchasing a lien on the motor vehicle in order to have the lien recorded on the title certificate. Therefore, the fact that Custom retained possession of the statement of origin has a definite bearing on whether Barnett is a bona fide purchaser of the conditional sales contracts.
The trial judge found:
“The preponderance of the evidence showed that the major financial institutions which take assignments of retail paper from mobile home dealers, when they do not hold the wholesale paper, followed the practice of inquiring as to the location of the Manufacturer’s Statement of Origin and as to wholesale liens. If a wholesale lien is discovered, the accepted practice is to pay off the wholesale finance company directly with directions to the wholesale finance company to forward the Manufacturer’s Certificate of Origin and Original Invoice. Defendant must be held to have knowledge of the established custom and usage in the trade and of' plaintiff’s liens on the involved mobile homes. Further, with this knowledge, defendant was in the best position to insure that no party suffered loss by following that practice of direct pay-off which, according to custom and usage in the trade, is considered prudent.”
There is sufficient evidence to sustain the trial judge’s conclusion. A. B. Jewell, erstwhile President of Cardair Mobile Homes, testified that with the exception of Barnett, all other retail financiers who purchased their conditional sales contracts paid the floor planner direct. Earl Dawson of Dawson’s Mobile Homes stated that the retail financiers he dealt with before he started using Barnett allowed him to title the vehicles after they purchased the retail title contracts hut required that he maintain a reserve zvith them. The evidence further shows that it is the custom of the trade for the manufacturer’s invoice to list the floor planner under “Terms,” and that the general practice among financing institutions, including Westinghouse Credit Corporation, Pioneer Finance Corporation, Universal C.I.T. and Central Bank & Trust Company, is to check with the floor planner, pay him off, and request the floor planner to forward the statement of origin directly to the purchaser of the retail sales contract.
In contrast to the general practice of the trade, Mr. Leroy Gardner, Vice President and Manager of the Installment Loan Department of Barnett First National Bank, testified that bankers had common knowledge that new automobile dealers and new mobile home dealers floor-planned their inventory, but he never checked with the floor planner “* * * because on our contracts the dealers warrant us good title free and clear of all liens and encumbrances.”
It should be further noted that Barnett prior to receiving the assignments had before it the original invoices, four of which reflected that the sales between the dealer and the manufacturer were financed 100% by the entruster, Custom Finance Company. In Trumbull Chevrolet Sales Co. v. Seawright[6] this Court held that a manufacturer’s window sticker containing the suggested retail price and reflecting that the vehicle was originally transferred to a Michigan dealer was sufficient notice to a purchaser from a licensed used car dealer in Florida so as to estop the purchaser from claiming that he was “an innocent purchaser for value” as against the one holding indicia of title, i. e. the certificate of origin. Certainly in the case sub judice the original invoices reflecting the terms of the sale of the mobile homes to the dealer was actual notice to a bank and would *297 estop the hank from claiming a lien superior to that of the one holding indicia of title.
But even as to the mobile home for which the dealer improperly submitted to Barnett the wrong invoice, had Barnett taken advantage of what it admits is common knowledge or had it followed the general practice of the banking trade, it would have protected itself as well as the entruster.
Furthermore, it is noted here that Barnett repossessed three of these mobile homes and sold them to other persons. These three purchasers, who purchased used mobile homes from one other than a dealer, without obtaining a certificate of title, which is prohibited by Section 319.21, Florida Statutes, F.S.A., are estopped from claiming a lien superior to that of one with indicia of title.[7] In fact, both the selling and the purchasing are prohibited by said section.
I conclude the trial judge was correct in ordering Barnett to remit the collections to. the entruster until his security interest was satisfied. I, therefore,
Dissent.

. Sections 673.09 and 673.10, Florida Statutes, F.S.A.

. Universal C.I.T. Credit Corp. v. Thursbay Chevrolet Co., 136 So.2d 15 (Fla.App.1st, 1961).

.Section 319.23, Florida Statutes, F.S.A.

. Trumbull Chevrolet Sales Co. v. Seawright, 134 So.2d 829 (Fla.App.1st, 1961).

. Id.